**IN THE**
**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**ROCK ISLAND DIVISION**

| | |
|---|---|
| CHADD MORRIS,<br>       Plaintiff, | |
| v. | Case No. 4:23-cv-04051-JEH |
| HEATHER HYMES, *et al.*<br>       Defendants. | |

**Order**

Plaintiff, Chadd Morris, a civil detainee in the Illinois Department of Human Services ("IDHS"), filed suit against Defendants under 42 U.S.C. § 1983. Pursuant to the Court's Merit Review (Doc. 7), Plaintiff stated a Fourteenth Amendment Due Process claim for failure to provide adequate mental health counseling against Defendants Hymes, Lodge, Colon, Cale, and Sheldon; a First Amendment retaliation claim against Defendant Jumper; and a *Monell* claim against Defendant Liberty Healthcare Corporation ("Liberty").

This matter is now before the Court on a Motion for Summary Judgment (Doc. 57) filed by Defendants. For the reasons stated herein, Defendants' Motion for Summary Judgment is GRANTED.

**I**

The following background facts are taken from the statement of undisputed facts sections in Defendants' summary judgment motion, Doc. 57, p. 2-46 ¶¶ 1-316, and Plaintiff's responses thereto, Doc. 62, p. 9-78 ¶¶ 1-40, Doc. 62-1, p. 2-78 ¶¶ 41-77, Doc. 62-2, p. 2-71 ¶¶ 78-109. Plaintiff has not proposed any additional material facts. *See* Local Rule 7.1(D)(2)(b)(5).

To the extent that facts are in dispute, the Court has reviewed each party's position on those facts and consulted the record. If a fact is incompatible with the record, the court has stated the fact as it appears in the record. If a fact is fairly in dispute even after reviewing the record, the Court has also provided the parties' positions on the disputed fact.

Given the extensive list of undisputed facts (numbering 316) the Court summarizes herein only those facts that are most relevant to the resolution of the instant motion.

Plaintiff is currently detained at IDHS's Rushville Treatment and Detention Facility ("Rushville") as a Sexually Violent Person ("SVP"). Doc. 57, p. 3 ¶¶ 2-3. His SVP action is pending in Cook County Circuit Court. Doc. 57, p. 3 ¶ 3.

Treatment at Rushville is provided through Phase Treatment. Doc. 57, p. 14 ¶ 97. Phase Treatment incorporates the use of groups specific to sex offenders, such as Disclosure group. Doc. 57, p. 15 ¶ 99. It also includes the use of ancillary groups, some of which are designed to help residents with issues common to reentering society. Doc. 57, p. 14 ¶ 100. It is also common for residents to have or develop treatment barriers while at Rushville. Doc. 57, p. 33 ¶ 222. Another ancillary group, Power to Change, is used to assist residents with various barriers to progressing in treatment. Doc. 57, p. 15 ¶ 101. In other words, Power to Change is designed to assist residents who are struggling in core groups, so that they may return to their group as more productive members rather than being left behind. Doc. 57, p. 15 ¶ 102. Power to Change referrals are never done to punish a resident. Doc. 57, p. 41 ¶ 277.

Phase Treatment is an accepted method of providing treatment to sex offenders in a confined setting, and all of these types of core and ancillary groups (albeit with different names) are commonly used by sex offender therapists. Doc. 57, p. 14-15 ¶¶ 98, 101.

Decisions regarding a Rushville resident's status in treatment groups are up to the collective judgment of the resident's treatment team. Doc. 57, p. 20 ¶ 143.

During all times relevant to this suit, Defendant Hymes was Plaintiff's primary therapist. Doc. 57, p. 5 ¶ 20. Defendant Lodge was the relevant "Blue Team" treatment team leader, and Defendants Colon, Sheldon, Cale were other members of the Blue Team. Doc. 57, p. 5-6 ¶¶ 17, 21, 23, p. 8 ¶ 42.

Plaintiff was in the Blue Team Disclosure group facilitated by Defendant Hymes beginning in approximately September 2021. Doc. 57, p. 22 ¶¶ 158, 161. Defendant Hymes regularly documented when Plaintiff's behavior was compliant and appropriate and when he engaged in Disclosure group in a positive manner, which occurred from approximately October 2021 through August 2022. Doc. 57, p. 22-26 ¶¶ 162-167, 172-175, 177-179, p. 30 ¶ 201.

On one occasion during that period, in May 2022, Plaintiff requested to speak individually with Defendant Hymes and shared that he had feelings of love for another group member, had apologized to the group member and expressed hopes of moving forward, and sought feedback from Defendant Hymes on how to do so. Doc. 57, p. 25 ¶ 176.

Beginning around late October to November 2022, Plaintiff exhibited behavior that showed blatant disregard for the peers in his Disclosure group, including preoccupation with a fellow group member which became distracting for him. Doc. 57, p. 28 ¶ 189. The team worked with Plaintiff during this time to try to redirect him while he remained in Disclosure group. Doc. 57, p. 28 ¶ 190. However, these efforts were unsuccessful. *Id.*

On December 1, 2022, Defendant Hymes and nonparty co-facilitator Mr. Stauffer documented that Plaintiff was not receptive to direction given to him during group. Doc. 57, p. 28 ¶ 191. On December 6, 2022, Plaintiff arrived at group and reported that he needed to process an incident that transpired between him and another group member. Doc. 57, p. 28 ¶ 193. Other group members challenged Plaintiff to consider that he might be experiencing feelings of rejection from this other member. *Id.* Plaintiff acknowledged that he had accosted a fellow group member in

the hallway, which was inappropriate and presented safety concerns. Doc. 57, p. 29 ¶ 194. As he was leaving group on December 6, Plaintiff made a statement of ill wishes towards the other group member. Doc. 57, p. 29 ¶ 196.

Plaintiff was informed that he would be transferred to Power to Change on December 13, 2022. Doc. 57, p. 29 ¶ 194. Defendants Hymes, Colon, Lodge, Sheldon, and Cale made a team decision to refer Plaintiff to Power to Change due to barriers to treatment that included a failure to follow directions provided by facilitators as well as preoccupation with another group member and other behaviors that interfered with the progress of other group members. Doc. 57, p. 35 ¶¶ 234-235, p. 46 ¶ 314. Plaintiff was assured that his measures of progress in Disclosure group had been noted but that ineffective behavioral patterns continued to impede his ability to consistently be a productive group member. Doc. 57, p. 29 ¶ 195.

As Plaintiff had been in Power to Change before and successfully returned to Disclosure group, the Blue Team determined that attending Power to Change was in his best interest in December 2022. Doc. 57, p. 30 ¶ 204. Plaintiff would not have progressed in treatment in Disclosure group without attending Power to Change. Doc. 57, p. 30 ¶ 203. Plaintiff was in a Power to Change group facilitated by Defendants Sheldon and Cale from approximately January to late June 2023, when he was referred back to the Disclosure group. Doc. 57, p. 39-40 ¶¶ 261, 265, 267, 269, 271, p. 42-44 ¶¶ 287, 291, 293, 295, 297.

However, Plaintiff believes Defendants Sheldon and Cale should have immediately referred him back to Disclosure group. Doc. 57, p. 10 ¶ 63. Plaintiff believes that Defendant Lodge could have immediately transferred Plaintiff to a different Disclosure group, where Plaintiff did not have a history of issues with other group members. Doc. 57, p. 11 ¶¶ 65, 67.

In addition, while Plaintiff was being treated by the Blue Team, he regularly sent 15 to 20 pages of notes to Defendant Lodge each week. Doc. 57, p. 38 ¶ 257. Defendant Lodge advised Plaintiff that she was not able to respond directly to each

note he submitted. *Id*. Often, Defendant Lodge determined that Plaintiff's notes and requests were distracting from the tasks he was assigned in group sessions. *Id*. Nothing that Plaintiff stated in his notes suggested to Defendant Lodge that any Blue Team providers were acting outside of the boundaries of standard sex offender phase treatment. Doc. 57, p. 38 ¶ 258.

Defendant Jumper is the Clinical Facility Director at Rushville. Doc. 57, p. 14 ¶ 95. In this role, Defendant Jumper does not typically make direct treatment decisions for Rushville residents. Doc. 57, p. 14 ¶ 96. Defendant Jumper was not personally involved in referring Plaintiff to Power to Change, nor did he make any other direct treatment decisions for Plaintiff. *Id*., Doc. 57, p. 15 ¶ 103. Defendant Jumper did not have more or better knowledge about Plaintiff than did his treatment team. Doc. 57, p. 20 ¶ 141.

After Plaintiff was referred to Power to Change in December 2022, Plaintiff alleges he requested that Defendant Jumper move him to a different treatment team or another Disclosure group but Jumper did not respond to that request. Doc. 57, p. 11 ¶ 72. Typically, requests submitted through the IDHS mail system at Rushville would be stamped upon receipt. Doc. 57, p. 16 ¶ 111-112. The requests that Plaintiff alleges he sent to Defendant Jumper are not stamped, and Plaintiff admits he has no evidence that Jumper received any of his complaints. *Id*., Doc. 57, p. 12 ¶ 77. Regardless, the copies of the requests at issue do not include specific complaints that staff were violating applicable standards, nor did Defendant Jumper have information from any source suggesting that Plaintiff's transfer to Power to Change violated any professional rules or regulations or was so far afield from professional standards that it required Jumper's intervention. Doc. 57, p. 17 ¶¶ 117, 119. Based upon a subsequent review of the written referral by Defendant Hymes, Defendant Jumper concludes that the identified reasoning for recommending Plaintiff be transitioned to Power to Change was appropriate. Doc. 57, p. 18 ¶ 122.

Plaintiff alleges Jumper's inaction was retaliation due to a prior lawsuit that Plaintiff filed against Jumper. Doc. 57, p. 12 ¶¶ 76, 79, 80. In that lawsuit, Central District of Illinois Case Number 28-cv-4121, Plaintiff alleged that an earlier referral from the Disclosure to Power to Change group violated his Fourteenth Amendment rights to treatment. Doc. 57, p. 13 ¶ 91, Doc. 57-7. The Court in that case entered summary judgment in favor of Defendants. *Id*. Defendant Jumper denies that his failure to interfere in Plaintiff's assignment to Power to Change in December 2022 had anything to do with Plaintiff's prior lawsuit against him. Doc. 57, p. 19 ¶ 137.

All individual Defendants named in this suit are employed by Liberty. Doc. 57, p. 14 ¶ 95, p. 21 ¶ 148, p. 32 ¶ 212, p. 38 ¶ 259, p. 42 ¶ 285.

Defendants attest that Liberty does not have policies and procedures directing therapists to transfer residents to Power to Change. Doc. 57, p. 19 ¶ 133, p. 20 ¶ 145, p. 31 ¶ 208, p. 37 ¶ 251, p. 41 ¶ 283, p. 45 ¶¶ 309, 313. Plaintiff disputes this assertion, arguing that certain exhibits allude to criteria for referral. Doc. 62-1, p. 11 ¶ 47, Doc. 62-2, p. 6 ¶ 80, Doc. 62-2, p. 29 ¶ 93, Doc. 62-2, p. 56 ¶ 104. Specifically, Plaintiff cites to four Power to Change Monthly Progress Notes, which include a section entitled "Treatment Barriers / Ratings as Identified at Time of Referral, and Current Ratings." Doc. 57-1, p. 15-20, Doc. 57-2, p. 1-2. In that section of the form, the Power to Change facilitators are directed to circle whether the resident is rated as high, medium, or low[1] with respect to ten pre-identified barriers:

| Perceived importance of change in comparison to conflicting goals | Perceived personal ability to change |
|---|---|
| Perceived need for change | Perceived personal ability to maintain the change |
| Perceived level of personal responsibility to change | Perceived costs associated with the means to change |

---

[1] The final portion of this Monthly Progress Note form includes "Criteria for Rating Identified Barriers (…included for reader reference)" which consists of the applicable criteria for applying low, medium, or high ratings. Doc. 57-1, p. 16, 18, 20, Doc. 57-2, p. 2.

| Perceived cost-benefit analysis of change | Perceived suitability and efficacy of the means to change |
| Perceived sense of urgency to change now | The realities of change |

*Id.*

Plaintiff alleges that the identified barriers on the Progress Notes form depart from standard sex offender regulations. The forms in question have the IDHS logo on the upper righthand side and the center header reads: "State of Illinois Department of Human Services Treatment and Detention Facility". Doc. 57-1, p. 15, 17, 19, Doc. 57-2, p. 1.

## II

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## III

### A

The Court turns first to Plaintiff's Fourteenth Amendment claim against Defendants Hymes, Lodge, Colon, Cale, and Sheldon for failure to provide adequate

mental health counseling, by allegedly modifying his progression plan without justification or professional basis for doing so. *See* Doc. 7, p. 2.

Civil detainees are constitutionally entitled to conditions and duration of confinement that bear some reasonable relationship to the purposes for which they are committed. *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003). Officials must provide "some treatment" for the underlying mental health conditions that led to a resident's confinement, but the nature of that treatment is left to the discretion of qualified mental health professionals. *Id*. at 1081. Treatment decisions are "presumptively valid" and entitled to deference, unless the evidence shows that that a decision constituted "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2009); *see also Youngberg v. Romeo*, 547 U.S. 307, 323 (1982).[2]

_____

[2] Plaintiff has filed a Motion to Supplement (Doc. 73), indicating that he believes courts in the Central District have "taken the position, prior, that they…do not possess authority to issue orders to the Rushville Treatment and Detention Facility Clinical Staff" because the "court cannot imp[i]nge against the 'professional' treatment providers issuing sex offender treatment[.]" Doc. 73, p. 3 ¶ 4. Plaintiff asks the Court to allow him to supplement his Response (Doc. 62) to provide the Court with a copy of an Illinois Appellate Court Order in *People v. Pieroni*, 2024 WL 5184095 (Ill. App. Ct. Dec. 20, 2024) (unreported).

Plaintiff's Motion to Supplement (Doc. 73) is GRANTED, insofar as the Court has reviewed and considered Plaintiff's arguments therein. However, the Court has applied the correct deferential standard towards treatment decisions, absent a substantial departure from accepted professional judgment or practice. *See Sain*, 512 F.3d at 895; *Youngberg*, 547 U.S. at 323. In addition, the case cited by Plaintiff was issued by an Illinois Appellate Court reviewing the civil commitment of another SVP and constitutes neither binding nor persuasive precedent for a federal District Court reviewing a § 1983 case. In addition, the Court notes that the Order submitted by Plaintiff was unpublished and has since been withdrawn. *See In re Commitment of Pieroni*, -- N.E.3d --, 2025 WL 354496 (Ill. App. Ct. Jan. 31, 2025).

Plaintiff claims that Defendants' decision to transfer him from Disclosure to Power to Change in December 2022 was a departure from standard sex offender treatment regulations set forth by the Sex Offender Management Board in 20 Ill. Admin. Code 1905.10 *et seq*. Throughout Plaintiff's response to the pending summary judgment motion, he cites the following specific provisions as the relevant standards violated by Defendants when they transferred him from Disclosure to Power to Change:

> Research indicates that treatment for criminal justice-involved populations, including adult sexual abusers, is most effective when it is delivered in accordance with the evidence-based principles of correctional intervention (risk, need and responsivity). As applied to treatment interventions for sexual abusers, this translates into the following:
>
>> 1) Risk: Sexual abusers presenting a higher risk of reoffending receive a greater intensity and dosage of treatment services, while lower risk sexual abusers receive less. Providing an inappropriate intensity of services may negatively affect treatment effectiveness and recidivism risk.

20 Ill. Admin. Code § 1905.80(b).

> Treatment providers working with sexual abusers shall utilize empirically supported methods of intervention. Recommended methods include structured, cognitive-behavioral, and skills-oriented treatment approaches that target dynamic risk factors.
>
> … 7) Treatment providers assist clients with identifying and enhancing prosocial interests, skills and behaviors that the clients themselves seek to enhance or attain (i.e., approach goals that are oriented toward a nonoffending lifestyle), as opposed to strictly focusing on managing inappropriate thoughts, interests, behaviors and risky situations (i.e., avoidance goals).

20 Ill. Admin. Code § 1905.100(a)(7).

> Treatment providers shall focus treatment interventions primarily on research-supported dynamic risk factors that are linked to sexual and nonsexual recidivism (i.e., criminogenic needs) over factors that have not been shown to be associated with recidivism, as outlined in this subsection (b).
>
> … 3) Attitudes Supportive of Sexual Abuse…C) Treatment providers are aware that, although clients may hold attitudes, beliefs and values that are

unconventional but unrelated to their risk for sexually abusive or criminal behaviors, these attitudes, beliefs and values are not deemed appropriate primary treatment targets.

20 Ill. Admin Code § 1905.100(b)(3)(C).

Treatment Engagement and Goal Setting

2) Treatment providers recognize that, although many clients present for sexual abuser-specific treatment as direct result of legal or other mandates, external motivators alone are generally insufficient for producing long-term change among clients….

4) Treatment providers recognize that client engagement may increase, and resistance may decrease, when the treatment provider and client are in relative agreement about treatment goals and objectives. To the extent possible, treatment providers involve clients in the development of their treatment plans and in the identification of realistic goals and objectives….

6) Treatment providers are aware that clients present with differing levels of internal motivation to change (and varied types and levels of denial and minimization related to sexually abusive behaviors, interests, arousals and attitudes and beliefs), but that such characteristics do not preclude access to treatment….

8) Treatment providers support the client in being honest in discussing the client history and functioning, but acknowledge that it is not the role of treatment providers to attempt to determine or verify a client's legal guilt or innocence or to coerce confessions of unreported or undetected sexually abusive behaviors.

9) Treatment providers are aware that attempting to provide treatment for problems that a client persistently denies having results in limitations in making reliable client recommendations about the individual's treatment progress and re-offense risk, and that this has ethical implications.

20 Ill. Admin. Code § 1905.100(c)(2), (4), (6), (8), (9).

The Court recognizes that the foregoing citations are to regulations provided by Illinois state law. By contrast, Plaintiff's § 1983 action is based upon alleged violations of the United States Constitution. The federal constitution does not permit a federal court to enforce state laws directly, nor is a violation of state law grounds

for a federal civil rights suit. *Allison*, 332 F.3d at 1079; *Guarjardo-Palma v. Martinson*, 622 F.3d 801, 806 (7th Cir. 2010).

Still, the Court understands that Plaintiff argues that these administrative regulations create or reflect the relevant "accepted professional judgment, practice, or standards" relevant to his Fourteenth Amendment claim. *Sain*, 512 F.3d at 895. Drawing all reasonable inference in Plaintiff's favor as the nonmoving party, and accepting these Illinois regulations as the relevant standard, the Court nevertheless concludes that Plaintiff has failed to provide evidence showing that Defendants' actions constituted a substantial departure from these standards.

Plaintiff's primary allegations are that Power to Change offered fewer treatment hours per week, as compared to Disclosure, and that Power to Change focused only on behavioral issues rather than sex offender specific treatment.

The regulations cited by Plaintiff do provide that abusers at "a higher risk of reoffending receive a greater intensity and dosage of treatment services, while lower risk sexual abusers receive less." 20 Ill. Admin. Code § 1905.80(b)(1). However, Plaintiff has not presented any evidence that he is a "higher risk" sexual abuser who should, under the standards, have received more treatment hours, as he alleges he would have received in Disclosure as compared to Power to Change.

As for the focus of Power to Change on ancillary behavioral issues or treatment barriers, rather than on sex offender specific or "core" treatment, Plaintiff has not cited any provisions that prohibit consideration of behavioral issues that are related to a resident's ability to successfully complete treatment. In fact, Plaintiff cited to Section 1905.100(a)(7), which provides that treatment should include "prosocial…skills and behaviors[.]"

Further, in other relevant provisions of Section 1905 not cited by Plaintiff, the regulations acknowledge the benefits of "using evidence-based behavioral techniques and interventions (e.g., prosocial modeling, skill practice, rehearsal of strategies…")" and indicate that treatment providers should assist clients in "[g]eneral [s]elf-

regulation" such as "learning and practicing problem-solving and impulse control skills." 20 Ill. Admin. Code §§ 1905.90(a)(6), 1905.100(b)(1)(B).

Based upon the undisputed facts, Plaintiff was referred to Power to Change to address barriers to treatment that included a failure to follow directions provided by facilitators as well as preoccupation with another group member, whom Plaintiff admitted he had accosted outside of group. It follows that it was not a substantial departure from the regulations provided in Section 1905 for Defendants to approve referral to Power to Change when the record reflects that Plaintiff required assistance with self-regulation and impulse control skills. *See* 20 Ill. Admin. Code 1905.100(b)(1)(B).

More generally, although Plaintiff argues that Section 1905 creates the relevant professional standards, that Section does not prescribe the specific manner in which sex offender treatment must be provided. Rather, it acknowledges that sex offender treatment is "an evolving science" and "recognize[s] the importance of individualized, assessment-driven treatment services." 20 Ill. Admin. Code § 1905.90. In addition, Plaintiff does not have a constitutional right to remain in any specific treatment group, and his disagreement with the treatment team's decisions is insufficient to impose constitutional liability. *Williams v. Ortiz*, 937 F.3d 936, 944 (7th Cir. 2019).

In sum, Plaintiff has not provided any evidence that Defendants' treatment decisions substantially departed from the prevailing standards in the field. Defendants are entitled to summary judgment in their favor on Plaintiff's Fourteenth Amendment claim.

**B**

Next, the Court considers Plaintiff's First Amendment retaliation claim against Defendant Jumper.

To prevail on a First Amendment retaliation claim, a prisoner must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a

deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009), *quoting Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008).

It is undisputed that Plaintiff engaged in First Amendment protected activity when he filed an earlier lawsuit against Defendant Jumper and others at Rushville.

The parties dispute whether Plaintiff suffered a deprivation that would likely deter First Amendment activity in the future. However, it is not necessary for the Court to reach a conclusion on this second element, as the record contains no evidence that Plaintiff's prior lawsuit was a motivating factor in Defendant Jumper's conduct at issue in this case.

Plaintiff's retaliation claim is based upon a complaint that Defendant Jumper did not transfer him to another treatment team or immediately return him to Disclosure after he was referred to Power of Change in December 2022. But the undisputed facts establish that Defendant Jumper is not typically involved in treatment decisions for Rushville residents and that, in accordance with this typical practice, Jumper was not involved in the decision to transfer Plaintiff to Power to Change or the timeline for his return to Disclosure group. There is no evidence to suggest that Defendant Jumper's lack of involvement in Plaintiff's treatment decisions was motivated by the fact that Plaintiff filed a previous lawsuit when the undisputed facts establish this was consistent with Defendant Jumper's typical practice as Director.

Plaintiff's response focuses in large part on the assertion that Defendant Jumper, as a supervisor, may be held liable if a constitutional violation occurred with his knowledge or consent, or if he turned a blind eye to such a violation. *See Hildebrandt v. Illinois Department of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 20203). But Plaintiff's arguments on this point are inapt, both because his citations do not relate to a retaliation claim and because the Court has found that there is no

evidence of an underlying constitutional violation that Defendant Jumper could have known about or condoned.

For these reasons, summary judgment must enter in Defendant Jumper's favor on Plaintiff's retaliation claim against him.

## C

Finally, Defendant Liberty moves for summary judgment on the *Monell* claim brought against it. *See Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Specifically, Plaintiff alleges that Liberty condoned or approved its employees providing inadequate or improper mental health treatment.

To succeed on a *Monell* claim, a plaintiff must show "(1) that he or she has suffered a deprivation of a constitutionally protected interest, and (2) that the deprivation was caused by an official policy, custom or usage of the municipality" or other institutional defendant acting under color of state law. *Powe v. City of Chicago*, 664 F.2d 639, 643 (7th Cir. 1981); *Shields v. Illinois Department of Corrections*, 746 F.3d 782, 789-90 (7th Cir. 2014).

In support of their summary judgment motion, Defendants attest that Liberty maintained no policies related to the treatment issues, i.e., a referral to Power to Change, alleged by Plaintiff in this matter. Plaintiff disputes this alleged fact, pointing to a form that lists ten barriers to treatment and criteria for evaluating whether a Rushville resident faces high, medium, or low barriers in each of those areas. Upon review, however, there is no indication on the form that it was generated by Liberty or pursuant to any Liberty policy or practice. There is no reference whatsoever to Liberty. Rather, the form is identified as an IDHS form.

More significantly, as indicated in the sections immediately prior, the Court has found no evidence that Plaintiff suffered any deprivation of a constitutionally protected interest. Therefore, without an underlying constitutional violation, Liberty cannot be held liable for any alleged policies. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

For these reasons, Defendant Liberty is entitled to summary judgment in its favor on Plaintiff's *Monell* claim.

## IV

For the foregoing reasons, Defendants' Motion for Summary Judgment [57] is GRANTED.  Summary judgment shall enter in favor of Defendants and against Plaintiff.

Plaintiff's Motion to Supplement [73] is GRANTED.

If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues Plaintiff wishes to present on appeal, to assist the Court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999) (an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $605.00 appellate filing fee regardless of the outcome of the appeal. If the Court allows him to proceed on appeal in forma pauperis that finding would allow Plaintiff to pay the appellate filing fee over time but would not release him from having to pay the fee.

This case is terminated.

*It is so ordered.*

Entered on May 16, 2025.

s/Jonathan E. Hawley
U.S. DISTRICT JUDGE